UNITED STATES of America, Appellee,

v.

Gerald Glenn BLUNT, Appellant.

No. 82–1220.

United States Court of Appeals, Eighth Circuit.

Submitted June 3, 1982.

Decided June 22, 1982.

Don N. Curdie, Asst. U. S. Atty., for appellee.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Gerald Glenn Blunt appeals from the district court's February 10, 1982, decision which revoked his probation and sentenced him to two years imprisonment. We affirm.

On March 23, 1977, Blunt pled guilty to six counts of a sixteen-count federal indictment which charged him with possession and forgery of stolen United States Treasury checks in violation of 18 U.S.C. §§ 495 and 1708. Following his guilty plea, Blunt was sentenced to three separate two-year imprisonment terms to run concurrently. The sentences were to run consecutively to a state court sentence Blunt was then serving in the Arkansas Department of Correction. The federal district court also imposed a two-year probationary term to be served following completion of Blunt's two-year federal sentence.

On March 7, 1979, Blunt was released from federal custody and, on March 8, 1979, he began his two-year probation term. On October 17, 1980—well within the two-year federal probationary period—Blunt was arrested by officials of the Pine Bluff, Arkansas, Police Department and charged with a state criminal offence—felony theft of property. Blunt's federal probation officer was notified of the arrest the following day. On April 6, 1981, Blunt pled guilty to the state theft charge and was sentenced to a two-year prison term. Blunt was taken into custody by state officials on April 8, 1981, and the United States Marshal thereupon lodged a detainer with the Arkansas Department of Correction.

On March 8, 1981, slightly less than five months after his October 17, 1980, arrest and before the date he pled guilty to the state charge (April 6, 1981), Blunt completed his two-year federal probationary term. No formal action was taken to revoke Blunt's federal probation until his probation officer requested and obtained a probation violation warrant on March 16, 1981. Blunt's probation officer indicated that no formal action to revoke Blunt's probation took place until March 16, 1981, because the probation officer at that time learned from the Pine Bluff prosecuting attorney that a tentative plea agreement had been made on the state charge.

On January 25, 1982, Blunt finished serving his prison term for the state felony theft charge. He was released from state custody subject to the federal detainer that had been lodged with the Arkansas Department of Correction.

On January 29, 1982, counsel was appointed for Blunt. A preliminary probation revocation hearing was waived and a final probation revocation hearing was set for February 10, 1982. After holding a final probation revocation hearing on that date, the district court revoked Blunt's probation and sentenced him to two years imprisonment. The probation revocation decision was based on Blunt's state court theft conviction, a conviction that resulted from acts occurring during Blunt's two-year federal probationary term.

■ In this appeal, Blunt does not challenge the ground on which the district court revoked his probation. Rather, he argues that the probation revocation is invalid because it was untimely. Blunt's argument that his probation revocation was untimely is two-pronged. First, he contends that a "probation revocation is untimely and violates due process of law when the probation officer has knowledge of the potential grounds for revocation for five months but allows the probationer to be discharged from his probation by operation of law be-

fore revocation proceedings are initiated." He apparently argues that the district court lacks power to revoke probation after the probationer's specific probationary term ends.[1]

This argument is without merit. Eighteen U.S.C. § 3653 provides in relevant part that

[a]t any time within the probation period, *or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period.* [Emphasis added.]

Eighteen U.S.C. § 3651 provides that the probationary period, "together with any extension thereof, shall not exceed five years."

"[A] district court's jurisdiction over a person admitted to probation continues throughout the maximum probation period authorized by the statute (now 5 years under § 3651) even though the court fixed the period of supervised probation at a lesser time." *United States v. Swanson*, 454 F.2d 1263, 1265 (7th Cir. 1972). "The sole effect of the expiration of a probationer's term of probation, where that term is under five years in duration, is to terminate his supervision by the Probation Office." *United States v. Miller*, 454 F.Supp. 440, 442 (N.D. Ill.1978) (citing *United States v. Swanson, supra,* 454 F.2d at 1266). *See United States v. Fontana*, 510 F.Supp. 158, 160 (W.D.Pa.), *aff'd mem.*, 673 F.2d 1303 (3d Cir. 1981).

Blunt argues that our decision in *United States v. Strada*, 503 F.2d 1081 (8th Cir. 1974), supports his contention that the government was untimely in initiating formal probation revocation proceedings in his case. In *Strada*, this Court observed that "a revocation can occur after the probationary period only if the violation is one that

---

1. We note parenthetically that in closing a probation case, a United States Probation Officer "should * * * [i]nform the probationer by let-

ter of the termination of supervision." Guide to Judiciary Policies and Procedures, Probation Manual, Vol. X–A, pp. 5–9 (Feb. 15, 1979).

occurred during that period and if formal revocation procedures—usually the issuance of an arrest warrant—are initiated during that period." *Id.* at 1084. It is important to note, however, that in *Strada*, the district court had imposed the maximum probationary term permitted by 18 U.S.C. § 3651: five years. Thus, unlike the facts in this appeal, *Strada* was a case where the actual probationary term imposed was coextensive with the five-year maximum probationary term permitted by 18 U.S.C. § 3651. When considered in its factual context then, *Strada* is not inconsistent with 18 U.S.C. § 3653 as interpreted by *Swanson, Miller* and *Fontana*.

■ In this case, because Blunt's probation violation occurred within his two-year federal probationary period and because the probation revocation warrant was issued and executed well within the maximum five-year period permitted by 18 U.S.C. § 3651, the district court had jurisdiction to revoke Blunt's probation. We caution, however, that as a matter of fundamental fairness, formal probation revocation proceedings should always be initiated as quickly as the facts of a particular case permit.

■ Blunt's second contention is that the district court erred in revoking his probation because the February 10, 1982, final probation revocation hearing was not held within a "reasonable time" as required by Fed.R.Crim.P. 32.1(a)(2). Rule 32.1(a)(2) provides in part that "[t]he revocation hearing, unless waived by the probationer, shall be held within a reasonable time in the district of probation jurisdiction." The Advisory Committee Notes to that rule, which became effective on December 1, 1980, state that "what constitutes a reasonable time must be determined on the facts of the particular case * * *."

Blunt's untimeliness argument based on Rule 32.1(a)(2) must fail. The probation violator warrant was procured as soon as Blunt's probation officer learned that Blunt planned to plead guilty to the state charge. We note with some concern that the warrant was not *executed* until after Blunt was released from state custody. The Supreme Court has held that such a delay does not violate a parolee's due process rights because the mere issuance of a warrant does not compromise the parolee's liberty interest. *See Moody v. Daggett*, 429 U.S. 78, 87, 97 S.Ct. 274, 278, 50 L.Ed.2d 236 (1976). *Accord, Hicks v. United States Board of Paroles and Pardons*, 550 F.2d 401, 402–404 (8th Cir. 1977). The *Moody* and *Hicks* decisions were rendered before the promulgation of Rule 32.1(a)(2). They do not, therefore, provide any guidance as to how long the authorities may "reasonably" delay the final revocation proceedings under that rule.

We will not say that in all cases the authorities may delay execution of a parole violator warrant until the parolee is released from custody, no matter how long the period of incarceration, without running afoul of Fed.R.Crim.P. 32.1(a)(2). We simply hold that under the circumstances of this case, the final probation revocation hearing was held within a reasonable time. The hearing was conducted on February 10, 1982, only ten months after Blunt pled guilty to the state charge that prompted the revocation. Blunt does not claim that the ten-month delay resulted in " '[d]im memories and disappearance of witnesses [which could] affect the outcome of [the] parole revocation hearing.' " *Kartman v. Parratt*, 535 F.2d 450, 455 (8th Cir. 1976). And once the warrant was executed, the probation revocation proceedings were completed very quickly thereafter. In fact, the final revocation hearing was held only sixteen days after Blunt's state incarceration ended. We, therefore, do not find that the district court's revocation of Blunt's probation was untimely. The order of the district court is affirmed.