61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Ray POLLARD, Defendant/Appellant.
 No. 94-3704.
 United States Court of Appeals, Seventh Circuit.
 Argued July 6, 1995.
Decided July 21, 1995.
 
 Before Cummings, Cudahy, and Coffey, Circuit Judges.
 
 ORDER
 
 1
 Ray Pollard appeals the denial of his motion to modify the special condition of his supervised release that prohibits him from drinking alcohol. He claims that the district court abused its discretion by imposing total abstinence and that he failed to receive counsel throughout the proceedings as mandated by Federal Rule of Criminal Procedure 32.1(b). We affirm.
 
 
 2
 In October 1989, federal authorities arrested Pollard and his associates Ronald Lambert and Norman Kawa. They were indicted for a number of drug-related offenses, and Pollard was also charged with a count of money laundering. On April 17, 1991, Pollard entered a plea of guilty to one count of manufacturing marijuana in violation of 21 U.S.C. Sec. 841(a)(1). While Pollard was on bond awaiting sentencing, he tested positive for marijuana. He was arrested and then released by the district court on condition that he participate in a substance abuse program. On May 8, 1991, Pollard was referred to Ramona Weitzel, a substance abuse counselor at Proctor Hospital. She in turn referred him to White Oaks Treatment Center ("White Oaks") due to his alcohol dependency. At White Oaks, Pollard was admitted by Dr. Robert Easton, Jr., M.D., who diagnosed him as alcohol and nicotine dependent. Jack Hauger, a substance abuse counselor for White Oaks, met with Pollard over a period of eight sessions.
 
 
 3
 On September 5, 1991, Pollard was sentenced to 27 months in prison and three years of supervised release. In addition to a standard pre-printed condition that he refrain from the excessive use of alcohol, the district court imposed a special condition: "Defendant shall refrain from the use of any alcohol or drugs during the period of supervised release."
 
 
 4
 On June 14, 1994, Pollard filed a "Motion to Modify Conditions of Supervised Release."[1] In that motion, he attacked the condition because it interfered with his First Amendment right to the free exercise of his religion by preventing him from taking wine with Holy Communion and because it prevented him from using non-prescription medications containing alcohol. He also argued that the condition bore no relation to his offense. The government responded by agreeing that these de minimis uses should be allowed; it did not address the relationship between the condition and the offense or whether the condition should be completely stricken and replaced with the standard condition of supervised release for the use of alcohol.
 
 
 5
 On July 15, 1994, the district court held a hearing that both Pollard, who was not represented by counsel, and the government attended. At the start of the hearing, Pollard said, "I was under the understanding that there was no objection from the Government by their pleading," to which the court responded, "Well, that doesn't mean that I'm going to grant it." (R. 158 at 2.) The district court noted that a report indicated that Pollard had been treated for alcohol dependence at White Oaks. Pollard told the court that people at the treatment center told him he was not alcohol dependant. The court decided that before it would agree to modify the condition, it needed to hear from someone at White Oaks. It scheduled another hearing and instructed the government to contact the treatment center to obtain a witness to testify on this subject.
 
 
 6
 The parties met again on July 25, 1995. Again Pollard was not represented by counsel. Dr. Easton, Hauger and Weitzel testified. Dr. Easton testified that he had diagnosed Pollard as having alcohol dependence. The doctor's original medical report, which mentions no physical manifestations of chronic alcoholism, note that diagnosis. The other two witnesses drew on their experience as substance abuse counsellors. Hauger stated that Pollard was alcohol dependant, and Weitzel said that he was or is an alcoholic. As Pollard's appellate counsel admitted at oral argument, Pollard effectively cross-examined these witnesses. At the end of the hearing, Pollard asked the court for an opportunity to obtain his own expert witness, which it allowed. On August 31, 1994, Pollard briefly appeared in court to ask for an attorney. The court granted the request.
 
 
 7
 On November 15, 1994, Pollard, who was represented by counsel, attended the final hearing. Pollard's expert witness, Theodore Mathews, a clinical psychologist who based his opinion upon interviews and questionnaires, testified that Pollard did not suffer from alcohol dependency. One of the criteria that Mathews relied upon in making his diagnosis was the fact that Pollard did not use any alcohol in the last twelve months. The government pointed out that during this period, Pollard was either in prison, during which time he did not have access to alcohol, or under court order to abstain. However, Mathews insisted that the prior twelve months were still the relevant period of time. Even so, he admitted that Pollard was at a greater risk of alcoholism than the average person.
 
 
 8
 At the end of the November 15 hearing, the district court pointed to testimony stating that Pollard had continued to drink despite "negative consequences" and that he was at greater risk than normal for alcoholism. After considering Pollard's history, the court stated:
 
 
 9
 I believe that the period of supervision allows the court the type of discretion that might be described in one way as the opportunity, by the restrictions that are placed against the defendant, to protect him from himself if he shows that there is a predisposition to harm himself or harm the public. If drinking alcohol to abuse ... is not the kind of predisposition that I believe the law anticipates, then I don't know what would be.
 
 
 10
 (R. 168 at 22.) It denied the motion to modify.
 
 
 11
 Although the parties have largely focussed on 18 U.S.C. Sec. 3583(d) and sentencing guideline provisions concerning the original imposition of conditions of supervised release, the court's authority to modify the sentence in these Rule 32.1(b) proceedings derives in this case from 18 U.S.C. Sec. 3583(e), which states in pertinent part:
 
 
 12
 The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6) --
 
 
 13
 * * *
 
 
 14
 (2) ... modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.[2]
 
 
 15
 "Subsection (2) ... can be employed either to the defendant's advantage or his disadvantage." United States v. Truss, 4 F.3d 437, 439 (6th Cir. 1993) (dictum) (relying on Advisory Committee Note to Rule 32.1(b)).
 
 
 16
 In determining whether to modify the sentence under Sec. 3583(e)(2), the district court should consider such factors as (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to deter criminal conduct, to protect the public from further crimes committed by the defendant, and "to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. Sec. 3553(a)(2)(D), and (3) relevant sentencing guidelines and policy statements as described in 18 U.S.C. Sec. 3553(a)(4)-(5), as well as the need to avoid unwarranted sentencing disparities among defendants with similar records who are guilty of similar crimes. We review the district court's refusal to modify the condition for an abuse of discretion. See also United States v. Briones-Garza, 680 F.2d 417, 424 (5th Cir.) (holding in case governed by Rule 32.1(b) and 42 U.S.C. Sec. 3651, that district court may, in its sound discretion, modify terms of probation if warranted), cert. denied, 459 U.S. 916 (1982).
 
 
 17
 The district court did not abuse its discretion by refusing to eliminate the challenged restriction on the grounds that it bore no relationship to the need to deter, to protect or to rehabilitate. Pollard contends that the condition does not relate to the offense and that it is not needed to protect the public or to rehabilitate Pollard himself. While the record contains little to indicate that a return by Pollard to alcoholic behavior posed a dramatic threat to public safety (although we recognize the more general concerns of drunk driving, etc.), it contains sufficient evidence to support the district court's finding that Pollard remains at a heightened risk of succumbing to alcoholism again, which would mean continued addiction despite negative personal consequences. In light of his history, the condition serves to ensure his rehabilitation. On the other hand, the record contains nothing to link Pollard's crime, the manufacture of marijuana, with his alcoholism.
 
 
 18
 If both a relationship to the offense and the need to rehabilitate were present, the district court would clearly not have abused its discretion by requiring abstention.[3] However, in this case, the court relied upon the history and characteristics of the defendant without expressly finding that the condition was reasonably related to the nature and circumstances of the offense. In some other circuits, district courts do not need to find that the condition pertains to every goal or factor in U.S.S.G. Sec. 5D1.3(b), which roughly paraphrases Sec. 3583(d)(1),(2). See also United States v. Abrar, 1995 WL 371750, at * 3 (2d Cir. June 22, 1995); Johnson, 998 F.2d at 698. However, in United States v. Kosth, 943 F.2d 798, 799, 800, 801 (7th Cir. 1991) (citing 18 U.S.C. Sec. 3563(b)), this court said that "[d]iscretionary conditions imposed by the district judge must be reasonably related to the nature and circumstances of the offense." See Sec. 3553(a)(1) (requiring court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant.")
 
 
 19
 In Kosth, the defendant was required to inform his probation officer of any financial obligations incurred by his wife over $250, in part to ensure that the defendant would be able to pay restitution. Id. at 800. Although the Kosth court stated that "[t]he reporting requirement is reasonably related to the nature and circumstances of this offense and the order of restitution," id. at 801, it did not clearly express how the wife's entry into new financial arrangements related to the defendant's prior fraudulent use of altered credit cards. However, the Kosth court did state that "[t]he condition serves a monitoring purpose in light of Kosth's history of masking his income and ownership of assets." Id. We construe Kosth as using a broader approach so that a finding concerning the history and characteristics of the defendant suffices to sustain Kosth's mandatory requirement.
 
 
 20
 At the time that the district court initially imposed the special condition, Pollard had just undergone treatment at White Oaks for alcohol dependence.[4] Requiring Pollard to keep away from alcohol at that time seems little worse than other requirements aimed at keeping a defendant away from bad influences, such as ordering the defendant to avoid certain types of people.[5] In light of his history of alcohol dependence, the imposition of this condition did not constitute an abuse of discretion, much less a fundamental miscarriage of justice. Although Pollard produced evidence suggesting that he was capable of following the abstinence requirement, the district court was not required to lift the restriction, given Pollard's history and his heightened risk of a relapse. It did not abuse its discretion by refusing to modify the condition of abstinence.
 
 
 21
 Pollard also claims that he was deprived of his right to counsel pursuant to Rule 32.1(b), which states in pertinent part:
 
 
 22
 A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected.
 
 
 23
 Pollard claims that the district court was obligated to appoint an attorney at the commencement of the July 25 hearing, at which the district court received the testimony concerning Pollard's prior alcohol abuse.
 
 
 24
 To the extent that Pollard focusses on the start of the July 25 hearing, the right to counsel under Rule 32.1 had not yet attached. The government did not object to the requested modification at the July 15 hearing, and thus at the start of the second hearing, there was still no indication that the government was objecting to the modification. However, during that hearing, the government began to "object," in the sense that it did not simply comply with the court's request to present witnesses to answer the court's questions. The government actively attempted to prove that Pollard did have an alcohol problem, which the court had already indicated might be possible grounds to deny the modification motion. Therefore, the government turned the situation into an adversary conflict between the parties.[6]
 
 
 25
 Pollard alleges only a technical violation of Rule 32.1(b). He does not argue that he lacked notice of his right to counsel or that the government's actions violated any specific constitutional right. Although Rule 32.1(b) has some constitutional underpinnings, see also United States v. Warden, 705 F.2d 189, 190 n. 1 (7th Cir. 1983) (per curiam), it does not involve an absolute Sixth Amendment right. Instead, the right to counsel derives from the principles in Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973), which held that the right to appointed counsel would be available on a case-by-case basis. In this instance, we do not find that Scarpelli's due process requirement had been triggered. Pollard effectively defended his interests, he never requested counsel before or during this hearing, see id., and he subsequently had the assistance of counsel to put on his own case. Thus he was not deprived of a fundamentally fair hearing. See id. at 789-91.
 
 
 26
 Since Pollard has failed to make out a case of constitutional error even by implication, the technical violation of Rule 32.1(b) is subject to a harmless error analysis under Fed. R. Crim. P. 52(a), which states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In most cases, this means that the error was prejudicial such that it must have affected the outcome of the proceedings. See United States v. Olano, 113 S. Ct. 1770, 1778 (1993). Pollard's counsel at oral argument suggested that Pollard might have been prejudiced because counsel could have objected to the testimony on the grounds of relevancy due to the age of the assessments of the doctor and the counsellors. However, the history of the defendant is a relevant factor in the decision of whether to modify a condition of supervised release, and the court evidently found this evidence extremely relevant. Pollard demonstrated the ability to effectively question the witnesses as to their expertise, methods and character during the period that he was without appointed counsel. In this case, we find the alleged error harmless.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Pollard's original pro se motion to modify this condition cites 28 U.S.C. Sec. 2255. However, both parties have treated the motion as one for modification pursuant to Fed. R. Crim. P. 32.1(b), and we will construe it as such
 
 
 [2]
 This section implicitly carries Sec. 3583(d)'s prohibition against imposing a greater restriction on liberty than "is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D) ...." Although we need not decide the issue because it does not affect the outcome in this case, we note that the phrase "the provisions applicable to the initial setting of the terms and conditions of post-release supervision," which could be construed to refer to such provisions in the Federal Rules of Civil Procedure, see United States v. Morales, 45 F.3d 693, 699 (2d Cir. 1995) (interpreting this phrase to refer to Rule 32), actually preceded the reference to the federal rules and therefore may in fact refer to 18 U.S.C. Sec. 3583(c),(d). Sentencing Act of 1987, P.L. 100-182, 101 Stat. 1266, 1268; see Sentencing Act of 1987, 1987 U.S.C.C.A.N. 2135, 2135 (noting that no House or Senate report was submitted with this legislation); H. Rep. No. 98-1030, 100th Cong., 1st Sess. 124-25, reprinted in 1984 U.S.C.C.A.N. 3307-08 (saying in legislative history of original Sec. 3583(e) that "[s]ubsection (e) permits the court, after considering the same factors considered in the original imposition of a term of supervised release to ... modify, reduce or enlarge the conditions of supervised release ....")
 Even assuming that a court does not apply Sec. 3583(e)(2) "pursuant to" subsection (d), other provisions require the court to factor in the necessity of the restriction when deciding to impose a condition of supervised release. See Sec. 3583(e)(2) (incorporating Sec. 3553(a)(4), which makes U.S.S.G. Sec. 5D1.3 a relevant factor; Sec. 5D1.3 requires a condition of supervised release to be reasonably related to need for condition to meet same factors cited in Sec. 3583(d)(2)); Sec. 3553(a)(2) (emphasis added) (stating that the court shall consider "the need for the sentence imposed" to obtain goals in Sec. 3553(a)(2)(B)-(D)). In essence, we see no reason to construe this web of statutes in such a way that it would prohibit a district court from imposing a more restrictive condition of supervised release than is reasonably necessary to meet the goals of deterring criminal conduct, protecting the public and providing the defendant with necessary educational or vocational training and medical or correctional treatment, see 18 U.S.C. Secs. 3553(a)(2)(B)-(D) and 3583(d), and yet allow such a restraint to result from a motion for modification.
 
 
 [3]
 See United States v. Thurlow, 44 F.3d 46, 47 (1st Cir.), cert. denied, 115 S. Ct. 1987 (1995) (upholding condition of total abstinence where defendant had continuing substance abuse problem and had used proceeds of crimes to purchase alcohol); see also United States v. Johnson, 998 F.2d 696, 699 (9th Cir. 1993) (upholding special condition of total abstinence due to dramatic history concerning alcohol and violence and to defendant's need for treatment); cf. also United States v. Shriver, 842 F.2d 968, 971 (7th Cir. 1988) (holding that in imposing probation condition of substance abuse treatment and alcohol abstention pursuant to 18 U.S.C. Sec. 3651 (repealed eff. Nov. 1, 1987), district court did not abuse its discretion by basing its decision on review of PSI and probationer's own denial of drinking problem). But see United States v. Prendergast, 979 F.2d 1289, 1292-93 (8th Cir. 1992) (holding that district court abused its discretion by imposing abstinence where condition did not relate to crime and defendant did not have history of substance abuse; however, court noted that defendant's gambling problem needed to be addressed as part of his supervised release)
 
 
 [4]
 To the extent that Pollard argues that the district court erred by refusing to eliminate the condition because it was not expressly listed in U.S.S.G. Sec. 5B1.4, p.s. ("Recommended Conditions of Probation and Supervised Release"), we disagree. Although the policy statement should be given due weight in guiding a sentencing court's discretion under Sec. 3583(d) to impose "any other condition it considers appropriate," the court may impose a novel restriction that otherwise meets the goals protected by Sec. 3583(d). See Abrar, 1995 WL 371750, at * 4-* 5 (holding that Sec. 3583(d) does not provide untrammelled discretion in light of Sec. 5B1.4, p.s., and refusing to permit broader condition, "at least in the absence of any articulated connection between [the condition] ... and the relevant considerations set forth in U.S.S.G. Sec. 5D1.3(b)."); see also Sec. 5D1.3, comment. (backg'd) (describing conditions as "generally" recommended). A district court that considers a motion for modification is not required to strike down a novel special condition that was proper when it was imposed at sentencing if the defendant has not demonstrated changed circumstances that would require modification
 
 
 [5]
 Cf. United States v. Showalter, 933 F.2d 573, 575 (7th Cir. 1991) (upholding condition that defendant avoid skin-heads and white supremacist groups because association with them would create high likelihood that he would be drawn back into violent behavior and because he needed to be separated "to have a chance of staying out of trouble."); cf. also United States v. Garcia, 35 F.3d 1125, 1132 n. 12, 1133 (7th Cir. 1994) (upholding condition requiring defendant convicted of conspiracy to distribute cocaine to participate in substance abuse treatment if he should ever test positive for drug use, even though at sentencing there was no evidence that defendant was drug user)
 
 
 [6]
 In fact, even though the government had previously agreed that Pollard should be able to use medications containing alcohol, at the end of the hearing, the government offered to put on a witness who would testify that there were non-alcoholic medications that Pollard could take